GOTHARD, Judge.
This is an appeal on quantum in a personal injury case.
Marianna Alexander sustained injuries on October 27, 1986, when a vehicle driven by Ann DeRouen hit the rear of her car at a traffic light. Mrs. Alexander filed suit against Mrs. DeRouen and her insurer, State Farm Mutual Automobile Insurance Company, and against her own uninsured/underinsured motorist carrier, Allstate Insurance Company. Carl Alexander joined in the suit as party plaintiff, seeking damages for loss of consortium.
The matter was heard before a twelve person jury on April 25 and 26, 1988. The judge granted Mrs. Alexander a directed verdict on the issue of liability. The jury made an unitemized award of $12,500 to Mrs. Alexander and awarded nothing to Mr. Alexander for loss of consortium. That verdict was made the judgment of the court and signed on May 23, 1988. This appeal followed.
The only issue before us is whether or not the award was so low as to be an abuse of discretion and, if so, what would be the lowest reasonable figure to which the court should raise the award.
Mrs. Alexander, 42 years old when the accident happened, owns Alexander Travel Agency with her husband and another couple. After the accident she drove home but her neck and back were hurting. At the suggestion of her brother-in-law, an anesthesiologist, she went to the emergency room of Mercy Hospital, where she received a cervical collar, medication for inflammation and for pain and was told to consult an orthopedist. Her brother-in-law referred her to Dr. Robert Shackleton, who saw her twice, the second and last time being December 3, 1986. She was still in pain then, particularly when the weather changed and became cold and when sitting at work. On examination he found full motion of the neck but tenderness where the paraspinous muscles (on the side of the neck) are attached to the skull. His impression was the same as when he first saw her on October 31, 1986, that she had suffered a cervical strain or pulled muscle or muscles in the neck. He recommended remedial exercises, aspirin as needed, breaks at work to rest the neck, and asked her to call back in a month. She did not call him or return, but on April 7, 1987 she consulted Dr. Kenneth Vogel, a neurosurgeon, whom she chose from several neurosurgeons recommended by her brother-in-law.
A week after her first appointment Dr. Vogel had an arthrogram performed by a radiologist. In this test needles are inserted at several joints to determine whether one produces pain. The joints are then anesthetized to find out whether the pain goes away. The report showed pain at the C-6, 7 level. Dr. Vogel’s impression was that she had a cervical facet arthropathy. Dr. Vogel testified at trial and explained that a facet is “part of the motion segment of the neck, where there is a distant point of two joints behind where one moves on its neighbor.” He stated an arthropathy is an inflammation or pain arising from a joint. A diagnosis is based on probability, from both negative and positive findings. When the pain persisted after physical therapy Dr. Vogel offered and she eventually decided upon a neurotomy. In this procedure sensory nerves supplying the joint are severed with an electrode. The procedure was done on August 25, 1987 at Mercy Hospital. Mrs. Alexander spent only the night before and the night after the surgery at Mercy and returned home to recuperate for six weeks. She was required to wear a cervical collar except when sleeping and to use a heating pad. She could not work or drive. At the end of six weeks she went back to work gradually-
Dr. Vogel testified that six weeks after surgery her “positive neurological findings had resolved or had healed in that she had mild limitation of motion.” When he last examined her on November 17,1987 he felt that she had had an excellent result, with 75% to 80% relief of pain. He said she should reach maximum improvement of 90% pain relief in August, 1988. The appellant’s counsel in brief asserts that Mrs. Alexander has a disability of 20% to 25%. This statement has no basis in Dr. Vogel’s *593 testimony, as the percentages he stated referred only to pain, not restricted mobility of the neck.
Two physicians examined Mrs. Alexander for the defense in April, 1988 prior to trial. Dr. Russell C. Grunsten, an orthopedist, found, a full range of motion in the neck, arm, and shoulder. His impression was that the neck was functioning normally mechanically and was normal neurologically. Neither X-rays taken on April 4,1988 nor a bone scan showed any indication of an old injury or new injury or active disease process. He felt further tests should have been performed before the neurotomy and stated that without the presence of objective signs of injury or disease he saw no justification for the surgery, although Dr. Yogel “must have felt he was doing the right thing.” Dr. Richard W. Levy, a neurosurgeon found Mrs. Alexander had full range of motion in her neck, with slight pain when he. pressed with his thumb over the right shoulder area. He found no signs of spinal cord injury or nerve root injury in her neck. He found no neurological disability. He stated that he would not have recommended a neurotomy in this case.
The medical expenses claimed by Mrs. Alexander were $7,987.79. The defense argues in brief that in making its global award the jury could have deducted Dr. Vogel’s bill and that of Mercy Hospital, roughly $6,600, because the surgery was unnecessary, in which case the award of $12,500 would have included a reasonable allowance for pain and suffering. We find no merit in this argument, for Mrs. Alexander as a layman had no reason to question the recommendation of surgery; also her brother-in-law, an anesthesiologist at Mercy, had told her Dr. Vogel was an excellent neurosurgeon and that he felt comfortable about her seeing him. For these reasons we allow the entire medical claim.
We agree with the defendants that Mrs. Alexander is not entitled to be reimbursed $800 for wages paid to a part-time worker during her absence from work. Mrs. Alexander drew her regular salary from the business and did not personally incur the expense of her replacement; accordingly, we disallow the claim of $800 in wages paid to a substitute.
Mrs. Alexander was in enough pain that after deliberating several months she opted to undergo the surgery. The accident occurred in October, 1986 and she obtained no appreciable relief for ten or eleven months. She has had to give up jogging, a sport in which she was very active and competed in races. She testified that while she feels the surgery, was successful, she still has pain in cold weather and cannot do lifting.
We find that under the facts of this case the award of $12,500 is unreasonably low and an abuse of discretion in that it awards only about $3,500 for pain and suffering when the special damages are deducted. In cases with similar injuries the lowest awards were in the area of $10,000, and increase the allowance for general damages in this case to $10,000. See Goodwin v. Hartford Acc. & Indem. Co., 530 So.2d 1218 (La.App. 2nd Cir.1988); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). When general damages of $10,000 are added to medical expenses (in round numbers) of $8,000 and $125 for rental of an automobile (undisputed), the revised award is $18,125.
Accordingly, for the reasons designated above, the judgment appealed from is revised as to the amount of the award and affirmed as revised.
REVISED IN PART AND AFFIRMED AS REVISED.